W. Clarke SWANSON, Jr., 1950 Trust Under Instrument Dated January 3, 1955, Swanco Trust Company, Trustee, Petitioner-Appellee and Cross-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant and Cross-Appellee.

Carol Swanson RHODEN, 1950 Trust Under Instrument Dated January 3, 1955, Swanco Trust Company, Trustee, Petitioner-Appellee and Cross-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant and Cross-Appellee.

Gerock Hurley SWANSON, 1950 Trust Under Instrument Dated January 3, 1955, Swanco Trust Company, Trustee, Petitioner-Appellee and Cross-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant and Cross-Appellee.

Nos. 74–1594, 74–1777, 74–1595, 74–1778, 74–1596 and 74–1779.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1975.

Filed June 13, 1975.

Robert Bernstein, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for Commissioner.

Donald R. Osborn, Sullivan & Cromwell, New York City, for Swanco Trust Co.

Before HEANEY and STEPHENSON, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

STEPHENSON, Circuit Judge.

These appeals and cross-appeals from a decision of the Tax Court, reported at P–H Memo T.C. ¶ 74,061 (1974), present the question of whether proceeds received under life insurance policies are excludable from gross income in the case of a transfer for valuable consideration under the exceptions created in Section 101(a)(2)(B) (26 U.S.C. § 101(a)(2)(B)).[1]

The government appeals from that portion of the Tax Court decision holding that life insurance proceeds payable upon the death of the grantor to grantor trusts are excludable because the grantor was considered to be the owner of the trusts under Section 674.[2] The gist of the government's contention is that Section 674 (and related statutes) was designed solely to tax income of grantor trusts to the grantor and did not destroy the trust entity so as to make the grantor-owner under Section 674 the "insured" under Section 101(a)(2)(B).

The petitioner (Swanco Trust Company, trustee of each of the trusts) cross-appeals from the Tax Court's findings and conclusion that the transfer of the life insurance policies to the Swanson Trusts for value was not made to a partnership in which the insured (Swanson) was a partner nor to a partner of the insured under Section 101(a)(2)(B). Petitioner also contends that the Tax Court erred in holding that Swanson was owner-insured of only 91% of the trusts for purposes of the statute.

---

* The Honorable Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

1. The applicable portions of Section 101(a) are as follows:

    § 101. *Certain death benefits*

    (a) Proceeds of life insurance contracts payable by reason of death.—

    (1) *General rule.*—Except as otherwise provided in paragraph (2) * * *, gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured.

    (2) *Transfer for valuable consideration.* —In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance contract or any interest therein, the amount excluded from gross income by paragraph (1) shall not exceed an amount equal to the sum of the actual value of such consideration and the premiums and other amounts subsequently paid by the transferee. The preceding sentence shall not apply in the case of such a transfer—

    * * * * * *

    (B) if such transfer is to the insured, to a partner of the insured, to a partnership in which the insured is a partner, or to a corporation in which the insured is a shareholder or officer.

    All statutory references are to the Internal Revenue Code of 1954 as in effect during the tax year in issue.

2. The pertinent portion of Section 674 provides:

    § 674. *Power to control beneficial enjoyment*

    (a) *General rule.*—The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor, * * *.

## BACKGROUND

The trusts were initially created by grantor Swanson's mother, who transferred stock to Swanson as trustee for each of Swanson's three children. Thereafter Swanson made further contributions to himself as trustee under the three trusts. The trusts were eventually codified, naming Swanson as trustee, and each trust contained a provision as follows:

> 11. The Trust instrument shall be subject to interpretation or amendment by the maker but any interpretation or amendment made shall not vest in the maker any right to property, income or corpus except as in the relationship of Trustee for the beneficiary hereof.

The trustee was given extensive powers to deal with the properties of the trusts. The trusts were irrevocable.

Shortly after codification of the trusts, Swanson executed an interpretation of the trusts which stated that the discretion and responsibility of determining whether payments are to be made from the trusts for the maintenance of the beneficiaries during minority or majority rests wholly with the trustee. A few months later Swanson resigned as trustee of the trusts and executed an amendment appointing Cecil A. Johnson as trustee and amending the successor trustee provisions. On December 2, 1957, Swanson issued an interpretation stating that the trustee of the trusts has the power to become a general or limited partner on behalf of the trusts. In May 1958 Swanson executed an interpretation stating that the trustee has the right and absolute authority to borrow money for the trusts.

On December 2, 1957, Johnson, as trustee for the trusts, and Swanson, in an individual capacity, signed an instrument entitled "W. Clarke Swanson Family Partnership." This partnership was to begin business on July 1, 1958, and its stated purpose was to engage in the business of constructing, furnishing, care, upkeep, rental and sale of rental properties. The specific purpose was to develop property in which Swanson owned a one-half undivided interest. The trustee of the trusts was named as the managing partner.

Under the partnership agreement, the Swanson trusts were to contribute life insurance proceeds on the life of Swanson having face values of $1,900,000 and cash surrender values of $245,492. These policies were initially owned by C. A. Swanson & Sons, a Nebraska corporation, the stock of which was owned by W. Clarke Swanson and Gilbert Swanson. The Swanson Company was acquired by the Campbell Soup Company in May 1955, at which time the policies were purchased by the Carl and Caroline Swanson Foundation, Inc. On December 12, 1957, the Swanson Trusts purchased the policies from the Foundation.

Upon the death of Swanson in 1961, the partnership received life insurance proceeds in the amount of $913,954.09, the entire amount of which it excluded from income. The partnership's total investment in the policies as of Swanson's death was $208,565.01.

Section 101(a) states that, except as otherwise provided, amounts received under a life insurance policy are not includable in gross income. Section 101(a)(2) and Section 101(a)(2)(B) provide that life insurance proceeds are includable in gross income in the case of a transfer for valuable consideration unless the transfer is to the *insured,* to a *partner of the insured,* or to a *partnership* in which the insured is a partner (emphasis supplied). The issue before the Tax Court, and in this court, is whether the exceptions to the transfer for valuable consideration rule of Section 101(a) is applicable to the transfer of life insurance in this case.

## THE PARTNERSHIP ISSUE

■ In the Tax Court, petitioner's first contention was that the Swanson Family Partnership, in which Swanson and the Swanson Trusts were partners, was a valid partnership for federal income tax purposes. Thus, the transfer

of the life insurance policies to the Swanson Trusts was to a partner of the insured.

The Tax Court found that the totality of the evidence indicated

that the parties did not intend to nor did they actually operate the [Swanson] Family Partnership as a viable partnership. It also indicates that [Swanson] never became a partner by virtue of his failure to contribute any property to the organization. Therefore, the transfer of the life insurance policies to the Swanson Trusts for value was not made to a partnership in which the insured [Swanson] is a partner nor to a partner of the insured.

P–H Memo T.C. ¶ 74,061 at 74–283.

Our jurisdiction to review decisions of the Tax Court is statutory. Title 26, U.S.C., § 7482 provides that we review such decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." Findings of fact shall not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). We are satisfied from an examination of the entire record in this case that no mistake has been committed. *Commissioner of Internal Revenue v. Duberstein,* 363 U.S. 278, 290–91, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Sohosky v. Commissioner of Internal Revenue,* 473 F.2d 810, 813–14 (8th Cir. 1973). The Tax Court's finding that the parties did not intend to nor did they actually operate the Swanson Family Partnership as a viable partnership is not clearly erroneous. No error of law appears. The factual background and applicable law are fully and fairly stated in the Tax Court's reported opinion. It will not be here repeated. The Tax Court is affirmed with respect to the partnership issue.

## THE "INSURED" ISSUE

The Tax Court held that since Swanson, grantor of the trusts, retained the right to interpret or amend the trust instruments, he had almost unlimited power to change beneficiaries, and he had complete control over the trust property,[3] he must be treated as owner of the trusts under Section 674 and, therefore, would be taxed as owner of the Swanson Trusts under this section. The Tax Court observed that the government "apparently concedes that, once this question is determined favorably for petitioner, [Swanson] would be considered to be the insured for the purposes of applying Section 101." The Tax Court further held that only to the extent that Swanson had contributed property to the trusts would he be considered grantor—in this case, 91%.

The government in this appeal contends that the insurance policies on the life of Swanson were transferred to the Swanson Trusts and not to the insured, and the proceeds, therefore, are not subject to exclusion under Section 101(a)(2)(B).

The government further argues that the Tax Court erred in concluding that the government conceded below that once it was determined that Swanson would be taxed as owner of the Swanson Trusts under Section 674, Swanson would be considered to be the insured for purposes of applying Section 101. The government does not dispute the factual finding of the Tax Court that Swanson possessed a power over beneficial enjoyment of the trusts within the scope of Section 674 and thus the trusts income was taxable to him. But it argues that the mere fact that the grantor is deemed the owner of the trust for the purpose of taxing trust income to him does not eliminate the trust as a tax entity; therefore, in this case it does not alter the fact that the trusts and not the grantor were the transferees of the insurance policies in question.

Petitioner below and here contends that the insurance policies were in fact transferred to the insured within the meaning of Section 101(a)(2)(B) since the trusts were "grantor trusts" and Swanson must be treated as the owner of the

---

**3.** Limited only in that he could not vest any ownership in himself.

trusts under Sections 671 and 674; further, that once the trusts are treated as the "insured" because of Swanson's control thereover, the trusts' identity cannot be split and thus the entire amount of the net proceeds of the policies, and not just 91%, should be excludable from gross income.

We cannot accept the government's contention that in this case Swanson, the grantor of the grantor-trusts, is not deemed the owner of the trusts for any purpose other than that of taxing trust income to him, and the trusts, therefore, retain their identity as a separate tax entity under Section 101(a)(2)(B). The provision in each trust instrument that it shall be subject to interpretation or amendment by the maker (except with respect to vesting property, income or corpus in himself as an individual) gave the grantor complete control over the insurance policies in question. Through his control over the trusts, he could exercise all of the incidents of ownership over the policies. He could, among other things, cause (1) a change in beneficiaries, (2) loans to be secured on the policies, or (3) even have the policies cancelled.

We are satisfied that Swanson was the owner-insured within the meaning of Section 101(a)(2)(B). *Compare Terriberry v. United States,* 74–2 U.S.T.C. ¶ 13,-002 (M.D.Fla., May 16, 1974). In *Terriberry* decedent's wife created a revocable grantor trust, transferred seven life insurance policies on the decedent's life to the trust, and named him as co-trustee, specifically prohibiting him from exercising any incidents of ownership in his individual capacity. In holding that the life insurance proceeds were not includable in the gross estate of the decedent-insured, the court stated at 8859–4:

> [B]ecause the trust in this case is a revocable or grantor trust, the grantor, Nancy, is treated as the owner for all tax purposes of the trust corpus and thus of the subject insurance policies. See Section 2038 of Internal Revenue Code as to estate taxes and Section 677(a) and Section 673(a) of

Internal Revenue Code as to income taxes. This treatment of the grantor of a revocable trust as the owner by the Government was most recently again affirmed in Revenue Ruling 73–584, I.R.B. 1973–52, 12 where the Service held that the transfer of an instalment obligation to a revocable trust created by the transferor did not result in a "disposition" because the grantor as a result of his power to revoke is treated as the owner of the entire trust.

> \* \* \* A grantor of a revocable trust containing the provisions of Nancy's trust is treated for all tax purposes as the owner of the trust corpus which here includes the seven insurance policies. \* \* \*.

By retaining the right to amend, modify or revoke her trust and to remove the decedent as a co-trustee at any time, Nancy effectively retained all incidences of ownership in the subject policies as the grantor of said trust. The treatment of the grantor of a revocable trust as the owner of the trust corpus is required by Section 2038 of the Internal Revenue Code as to estate taxes and Sections 673 and 677 of the Internal Revenue Code as to income taxes. The decedent's appointment as a co-trustee could have been terminated at any time and he thus had no real power or authority over the subject insurance policies equivalent to an incident of ownership under Section 2042. The transfer of the insurance policies on decedent's life from Nancy to her revocable trust created no income, gift or estate tax consequences and such transfer is treated for tax purposes, in effect, as not being made.

The mere fact that the legislative history of Section 674 and related statutes indicates that the purpose of the legislation was to tax the income of grantor-trusts to the grantor does not require the strained construction of Section 101(a) urged by the government.

We hold that in this case, since Swanson owned and controlled the trusts, the

policies were transferred to the "insured" within the meaning of Section 101(a)(2)(B) and the net proceeds are therefore excludable from gross income under Section 101(a)(1).

 Petitioner urges that the Tax Court erred in concluding that Swanson should be considered grantor only as to the portions of the trusts that are equal to the percentage of property contributed by him. No authority is cited in support of this proposition. We agree with the Tax Court that a taxpayer is considered to be a grantor only with regard to the property actually contributed to the trust and owned by him at the time of contribution. *Parker v. Commissioner of Internal Revenue,* 166 F.2d 364 (9th Cir. 1948); *Herberts v. Commissioner of Internal Revenue,* 10 T.C. 1053, 1062–63 (1948).

Affirmed.