PAUL ALTENPOHL and MARGARET ALTENPOHL, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Altenpohl v. Commissioner
Docket Nos. 9410-75, 9411-75, 9412-75.
United States Tax Court
T.C. Memo 1977-342; 1977 Tax Ct. Memo LEXIS 100; 36 T.C.M. (CCH) 1377; T.C.M. (RIA) 770342; September 28, 1977, Filed William G. O'Neill and Hugh C. Sutherland, for the petitioners. Lowell F. Raeder, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Docket No.
Petitioner
TYE
Deficiency
9410-75
Paul Altenpohl and
12/31/73
$37,082
Margaret Altenpohl
9411-75
William Altenpohl and
12/31/73
39,262
Helen Altenpohl
9412-75
W. F. Altenpohl, Inc.
6/30/73
972
6/30/74
4,576
The primary issue presented in this case is whether the transfer of certain property by Altenpohl Brothers, Inc., to W. F. Altenpohl, Inc. and the subsequent dissolution of the transferor corporation and distribution of its assets to its shareholders, William Altenpohl and Paul Altenpohl, constituted a sale of such property and a liquidation of the transferor, or a corporate reorganization under section 368(a)(1)(D). [2] Resolution of this issue will be determinative of the parties' disagreement regarding the transferee corporation's basis in the property it received from Altenpohl Brothers, Inc. for *103 purpose of depreciation. If it is held that a reorganization occurred, an additional issue presented is the extent to which amounts distributed to William Altenpohl and Paul Altenpohl by the transferor corporation are to be treated as dividends under section 356(a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner W. F. Altenpohl, Inc. (Altenpohl) is a Pennsylvania corporation established in 1949. At all times relevant herein, its principal place of business was located in West Conshohocken, Pennsylvania. The corporation keeps its books and records on an accrual basis with a fiscal year ending June 30. Altenpohl's business is the manufacture of food processing machinery. It has one class of stock authorized and outstanding which, during all relevant periods, was owned equally (67 shares each) by William Altenpohl and Paul Altenpohl. Petitioners William Altenpohl (William) and Helen Altenpohl, husband and wife, resided in Gladwyne, Pennsylvania, at the time of filing their petition herein. They filed their joint Federal income tax return for *104 1973 in accordance with the cash receipts and disbursements method of accounting. Petitioners Paul Altenpohl (Paul) and Margaret Altenpohl, husband and wife, resided in Bryn Mawr, Pennsylvania, at the time of filing their petition herein. They filed their joint Federal income tax return for 1973 in accordance with the cash receipts and disbursements method of accounting. William and Paul are brothers. Their wives are parties solely by virtue of having filed a joint return with their husbands for 1973. In 1973, William and Paul each owned one-half of the outstanding stock of Altenpohl Brothers, Inc. (Brothers), a Pennsylvania corporation founded in 1961 which, during the taxable year in issue, had its principal place of business in West Conshohocken, Pennsylvania. William and Paul each had a basis of $12,500 in such stock holdings. The principal asset of Brothers was a parcel of improved real estate, consisting of land and a multi-purpose industrial building. Brothers leased the land and the structure located thereon to Altenpohl for use by the latter corporation as its primary place of business. Brothers engaged in no activities other than the renting of this land and *105 building to Altenpohl. On March 20, 1973, a Plan of Complete Liquidation of Brothers was adopted and approved by its shareholders and board of directors. On or about May 17, 1973, Brothers sold the improved real estate owned by it to Altenpohl at its fair market value price of $175,000. Payment for the property consisted of $25,000 in cash and a mortgage for $150,000. Brothers' adjusted basis in the depreciable building involved was $43,924.12 at the time of its sale. After the sale, the building, previously rented to Altenpohl by Brothers, was owned by Altenpohl and used without interruption in the same capacity in its manufacturing operation. Upon acquisition of this property, Altenpohl reported a purchase price basis in the building of $161,500. It employed this basis for depreciation purposes on its Federal income tax returns, using a straight-line method with a useful life of 33-1/3 years. Brothers ceased doing business as of July 31, 1973, and made a final distribution of assets to its two shareholders, William and Paul, on September 30, 1973. The total distribution received by each shareholder from Brothers consisted of cash in the amount of $25,975.16 and a mortgage *106 receivable of $75,000. At the time of its liquidation, Brothers had retained earnings of $55,329.37, plus net earnings for its final year of $1,313.24. At the time of the distribution from Brothers to William and Paul, the earnings and profits of Altenpohl were in excess of $205,000. On each of their Federal income tax returns for the calendar year 1973, William and Paul reported the distribution from Brothers in accordance with their characterization of the transaction as a complete liquidation of Brothers.As such, each reported the transaction as giving rise to a long-term capital gain of $88,475.16 (total amount received less stock basis of $12,500). OPINION Petitioners William and Paul each owned one-half the outstanding stock of two corporations: Altenpohl, which is engaged in the manufacture of food-processing machinery, and Brothers, which owned and leased its principal asset, certain improved real estate, to Altenpohl for use as the latter's place of business. In 1973, Brothers transferred the improved real estate to Altenpohl, receiving cash and a mortgage as payment for the property. Brothers then distributed all its assets, including the mortgage receivable, to *107 William and Paul in equal amounts in exchange for their Brothers stock. The present controversy concerns the proper tax treatment to be accorded the foregoing transactions. Petitioners contend that such transactions merely constituted a sale of assets and a distribution in complete liquidation of Brothers in accordance with sections 337 and 331. As such, petitioners conclude that the amounts received by William and Paul in exchange for their stock in Brothers are entitled to capital gain treatment. Respondent, on the other hand, maintains that the purported sale of assets and liquidation of Brothers were merely steps in an integrated transaction which qualified as a corporate reorganization under sections 368(a)(1)(D) and 354, coupled with the distribution of a dividend to William and Paul under section 356(a)(2). We agree with respondent. It is well established that where the liquidation of a corporation is preceded, as here, or is followed by a transfer of substantially all of the corporation's assets to another corporation which is owned in the same proportions by the same shareholders *108 as the transferor, the transactions may be treated as steps in a corporate reorganization. Ringwalt v. United States,549 F.2d 89 (8th Cir. 1977); Love v. Commissioner,113 F.2d 236 (3d Cir. 1940); Wilson v. Commissioner,46 T.C. 334 (1966); James Armour, Inc. v. Commissioner43 T.C. 295 (1964); Grubbs v. Commissioner,39 T.C. 42 (1962). The underlying premise for such treatment is that a corporate reorganization, unlike a liquidation, contemplates a continuation of the business enterprise in a modified corporate form with no substantive change in the respective rights of the shareholders. Bazley v. Commissioner,331 U.S. 737 (1947); Ringwalt v. United States,supra;Lewis v. Commissioner,176 F.2d 646 (1st Cir. 1949); American Manufacturing Co. v. Commissioner,55 T.C. 204 (1970). In the present case, reorganization treatment should be accorded the transactions in issue as they clearly met the statutory requirements of section 368(a)(1)(D). [3] *109 The first requirement of section 368(a)(1)(D) is a "transfer by a corporation of all or a part of its assets to another corporation." This requirement was satisfied by the transfer of Brothers' principal asset to Altenpohl. The second requirement imposed by the statute is that "immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer) * * * is in control *110 of the corporation to which the assets are transferred." In this case, William and Paul who controlled Brothers, the transferor, were in control of Altenpohl, the corporation to which the assets were transferred, both before and after such transfer. Finally, the statute requires that pursuant to a plan of reorganization, stock or securities of the transferee corporation (Altenpohl) are distributed in a transaction that qualifies under section 354, 355 or 356. These requirements have likewise been met in this case. The transactions in this case were executed pursuant to a general plan which was approved by all interested parties. The continuation of the business enterprise was an essential element in such plan. It is not necessary that the plan be formally denominated a plan of reorganization and be embodied as such in a written agreement. Pebble Springs Distill. Co. v. Commissioner,231 F.2d 288 (7th Cir. 1956); Lesser v. Commissioner,26 T.C. 306 (1956). While Altenpohl did not issue additional stock for distribution to either Brothers or William and Paul, the individual petitioners already owned all of the outstanding stock of both corporations. *111 Therefore, the issuance and distribution of such stock would be a meaningless formality and is unnecessary to meet the requirements of the statute. American Manufacturing Co. v. Commissioner,supra;James Armour, Inc. v. Commissioner,supra.
In order for a transaction to qualify under section 354 in a "D" reorganization, the transferee corporation (Altenpohl) must have acquired "substantially all" the assets of the transferor corporation (Brothers). Section 354(b)(1)(A). Petitioners apparently construe this requirement to mean that the assets transferred to Altenpohl must be indispensable to the continuation of the transferee's business. We find no basis in the statute, the decided cases, or logic which would support petitioners' interpretation of this requirement. Rather, we find that such requirement was satisfied by the transfer of Brothers' only asset of significance to Altenpohl. See Commissioner v. First Nat. Bank of Altoona,104 F.2d 865 (3d Cir. 1939); Moffatt v. Commissioner,42 T.C. 558 (1964), affd. 363 F.2d 262 (9th Cir. 1966), cert. denied 386 U.S. 1016 (1967); *112 Wilson v. Commissioner,supra.
These requirements of section 354 having been met, the transaction qualified under section 356 because it would have qualified under section 354 had William and Paul not received cash and the mortgage receivable from Brothers. Section 356(a)(1). Accordingly, we conclude and hold that the transactions described herein constituted a statutory reorganization of Brothers under section 368(a)(1)(D). [4]
Having held that a reorganization occurred, it remains to be determined the extent to which the cash and mortgage receivable distributed to William and Paul by Brothers are to be treated as a dividend under section 356(a)(2). [5] We have previously held that such amounts are taxable as a dividend to each shareholder under that section only to the extent of the taxpayer's ratable share of the earnings and profits of the distributing corporation (Brothers). American Manufacturing Co. v. Commissioner,supra; *113 James Armour, Inc. v. Commissioner,supra.We adhere to that position. Due to concessions, Decisions will be entered under Rule 155 in docket Nos. 9410-75 and 9411-75. Decision will be entered for the respondent in docket No. 9412-75. Footnotes
1. Cases of the following petitioners are consolidated herewith: William Altenpohl and Helen Altenpohl, docket No. 9411-75; and W. F. Altenpohl, Inc., docket No. 9412-75.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. SEC. 368(a). Reorganization-- (1) In General-- * * * the term "reorganization" means-- * * *
(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356↩.
4. Having determined that a reorganization occurred, it follows that Altenpohl's basis in the building acquired from Brothers is the same basis as the property had in the hands of Brothers. Sec. 362(b).↩
5. Respondent has conceded on brief the propriety of a reduction in each shareholder's gain in an amount equal to his respective adjusted basis in the Brothers stock. This adjustment will consequently reduce the amount of each shareholder's dividend. See sec. 1.356-1(c), Income Tax Regs.↩